UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GASSAN MARZUQ and LISA CHANTRE, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 11-10244-FDS |
| CADETE ENTERPRISES, INC., SAMOSET ST. DONUTS, INC., T.J. DONUTS, INC., and JOHN CADETE, | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**
[Docket No. 50]

August 29, 2013

Boal, M.J.

This case arises from a dispute regarding overtime compensation. Plaintiffs Gassan Marzuq ("Marzuq") and Lisa Chantre ("Chantre"), two former managers of local Dunkin' Donuts stores, bring suit against several affiliated corporate owners and operators of Dunkin' Donuts franchises and their president (collectively, "Defendants" or "Cadete Group"). Marzuq and Chantre contend that they are entitled to overtime compensation for hours worked above forty hours per week, as provided by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Marzuq further asserts that he was unlawfully terminated in retaliation for filing the instant action. Cadete Group counters that neither Marzuq nor Chantre are entitled to overtime pay and that Marzuq's termination resulted from his violation of Cadete Group's tip policy. Pending

1

before the Court is Cadete Group's motion for summary judgment on all counts. For the following reasons, this Court recommends[1] that Cadete Group's motion be DENIED.

I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendants are three corporate entities, Cadete Enterprises, Inc., T.J. Donuts, Inc., and Samoset St. Donuts, Inc., and their president, John Cadete ("Mr. Cadete"). The parties dispute the precise ownership structure of Cadete Group. SUMF at ¶¶ 3-5. Mr. Cadete is the president of all three named corporate defendants. Id. at ¶ 6. Cadete Group asserts that Mr. Cadete is "semi-retired and has had no involvement in the day-to-day operation of any of the Dunkin' Donuts stores," including the stores where Plaintiffs worked, for at least ten years. Id. at ¶ 7. Cadete Group further states that the directors of operations, not Mr. Cadete, set the salaries for store managers. Id. at ¶ 9. Plaintiffs contend, however, that Mr. Cadete maintains an office at a Cadete Group corporation, spends 2-9 hours a day there, and works with the operations managers to set salaries for store managers. Id. at ¶¶ 7, 9. The parties dispute whether Mr. Cadete or the corporate defendants own directly the franchises at issue here. Id. at ¶¶ 4, 5.

From 2007 until his termination in April 2012, Marzuq worked as a store manager at one of Defendants' Dunkin' Donuts stores. Id. at ¶¶ 1, 4. Chantre worked as a store manager at

---

[1] On February 13, 2012, the District Court referred this action to the undersigned for full pretrial management and for reports and recommendations on dispositive motions.

[2] The facts, unless otherwise noted, are undisputed and are derived from the Combined Statement of Undisputed Facts ("SUMF __") (Docket No. 65). Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to the non-moving party. See DeNolvellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997).

another of Defendants' Dunkin' Donuts stores until her termination on October 6, 2010. Id. at ¶¶ 2, 5.[3]

The parties dispute the role and responsibilities of the store manager. Cadete Group states that store managers are first and foremost responsible for the operation and performance of their respective stores. Id. at ¶ 10. Cadete Group asserts that Marzuq functioned as the leader of the team in his store and directed non-managerial members at all times while in the store. Id. at ¶ 13. Marzuq and Chantre counter that the primary role of the store manager is to serve Cadete Group customers. Id. at ¶ 10. They further contend that a Cadete Group district manager, Aaron Dermady ("Mr. Dermady"), was responsible for the operation and performance of their stores, including setting the budget, determining staffing levels, and overseeing and completing ordering. Id. The parties further dispute the extent to which Marzuq and Chantre engaged in managerial tasks. Id. at ¶¶ 11-12.

Cadete Group states that store managers are paid a weekly salary and are expected to work a six-day, 48-hour week. Id. at ¶ 19. Marzuq and Chantre explain that managers were expected to work at least six days and at least 48 hours per week. Id. Frequently, managers had to work more than 48 hours per week, and often more than 60 hours a week. Id. If a crew member called out sick or otherwise missed a shift, Marzuq and Chantre were tasked to find a replacement (with the assistance of Mr. Dermady) or fill in for the missing crew member. Id. at ¶ 46. Marzuq received a weekly salary of $825. Id. at ¶ 20. Chantre received a weekly salary of $600. Id. Crew members were paid $8 per hour, and managers had no discretion to raise their pay. Id. at ¶ 43.

---

[3] Lisa Chantre is deceased. On July 18, 2013, her counsel sought to substitute her estate as the proper party pursuant to Rule 25 of the Federal Rules of Civil Procedure. This Court granted her request on August 29, 2013.

In February 2011, Marzuq's sons filed a class action lawsuit against Cadete Group alleging that its tip policy violated the Massachusetts Tips Act, M.G.L. ch. 149, § 152A. Id. at ¶ 59. On November 9, 2011, Marzuq testified at a deposition as part of that case. Id. at ¶ 23. The parties, however, dispute the substance of Marzuq's testimony and the circumstances surrounding the subsequent amendments made to Cadete Group's tip policy. Cadete Group insists that the company changed its tip policy in 2009 to prohibit managers from accepting tips, that Marzuq knew of the policy change, and that he continued to share in tips in violation of the policy for two years. Id. at ¶¶ 21-23. Cadete Group further states that Marzuq himself fired employees for violating the tip policy. Id. at ¶¶ 25-26. To the contrary, Marzuq responds that he was not aware that Cadete Group had changed the policy in 2009, that he stopped sharing in tips in December 2010, and that employees were terminated who violated the policy only after Cadete Group was sued for violating the state tips law. Id. at ¶¶ 23-26.

Cadete Group states that Marzuq had issues with store cleanliness prior to his termination. Id. at ¶ 27. By way of example, Cadete Group points to a routine audit conducted by Dunkin' Brands in 2010 which noted evidence of rodents under the donut case, urged that the back of the store was not properly maintained, and explained that the "back of the house needs a good, deep cleaning." Id. Marzuq responds that his store scored 100% for both interior and exterior cleanliness, as cited in documents relied on by Cadete Group. Id.

On February 14, 2011, Marzuq and Chantre filed the instant suit for overtime compensation under the FLSA. Docket No. 1.

In July 2011, a Dunkin' Brands audit of Marzuq's store noted that the back of the store needed a good cleaning and organizing and that additional cleaning was needed under the bagel case. SUMF ¶ 28. Marzuq notes that this same audit rated his store at 100% for both interior

4

and exterior cleanliness.  Id.  In October 2011, another audit concluded that the "office needs a good cleaning—it is an attraction for pests!"  Id. at ¶ 29.  In the time between filing the instant action and his termination, Marzuq also received written warnings from Cadete Group for cleanliness issues and for failing to wear a uniform while working.  Id. at ¶¶ 30, 32.  Marzuq acknowledges such citations but stresses that they occurred after he testified in his sons' lawsuit and filed the instant action.  Id. at ¶¶ 27, 32.

According to Marzuq, Cadete Group fired him on April 24, 2012, but did not provide him with a reason for the termination.  Id. at ¶ 66.  Instead, Cadete Group instructed him to call his attorney if he wanted to know why he was being terminated.  Id.  Cadete Group responds that it terminated Marzuq as a result of "repeated violations of the tip policy and other company policies."  Id. at ¶ 34.  Cadete Group further states that, given the terminations of other Cadete Group employees who violated the tips policy, Marzuq knew or should have known why he was terminated.  Id. at ¶ 66.

After Marzuq's termination, Cadete Group states, the store manager who replaced Marzuq was able to maintain an "acceptable or even superior level" of cleanliness.  Id. at ¶ 31.  Marzuq counters, however, that his store earned a score of 100% on the Dunkin' Brands audits cited by Cadete Group, while the store earned a 0% in the month after Marzuq's discharge.  Id. at ¶¶ 27, 28, 31.

Plaintiffs filed motions to amend their complaint on April 17, 2012 and May 7, 2012.  Docket Nos. 25, 27.  This Court granted both motions.  Docket Nos. 32, 33.  In their third amended complaint, Marzuq added his claims for retaliation under the FLSA and state law.  Docket No. 34 at 6.

II.  **STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

"[T]he material creating the factual dispute must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth. Optimistic conjecture . . . or hopeful surmise will not suffice." Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 338 (1st Cir. 1997).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to

judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

III.   ANALYSIS

Plaintiffs contend that Cadete Group failed to pay overtime wages in accordance with the FLSA. AC at 5.[4] Marzuq further alleges that Cadete Group retaliated against him for filing a complaint under the FLSA, in violation of both the FLSA and state law. Id. at 6. Cadete Group moves for summary judgment on all counts. With respect to the claims for overtime pay, Cadete Group moves on the grounds that Marzuq and Chantre were employed in a "bona fide executive capacity" and, therefore, were exempt from overtime compensation under the FLSA. With respect to Marzuq's retaliation claims, Cadete Group moves on grounds that it fired Marzuq for violating its longstanding tip policy, not for filing the instant action.

   A.   Overtime Compensation

As a general matter, employees are entitled to overtime compensation for all hours worked in excess of forty hours in a given week. See 29 U.S.C. § 207. Any "employee employed in a bona fide executive, administrative, or professional capacity," however, is exempt from receiving overtime pay. See 29 U.S.C. § 213(a)(1). The term "employee employed in a bona fide executive capacity" means any employee:

   (1) Compensated on a salary basis at a rate of not less than $455 per week…;

   (2) Whose primary duty is management of the enterprise in which the employee is employed, or of a customarily recognized department or subdivision thereof;

   (3) Who customarily and regularly directs the work of two or more other employees; and

---

[4] "AC _" refers to Plaintiffs' Third Amended Complaint. Docket No. 34.

>   (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). FLSA exemptions, including the "bona fide executive" exemption, are to be interpreted narrowly against the employer, and the employer bears the burden of showing that an exception applies. See O'Brien v. Town of Agawam, 350 F.3d 279, 294 (1st Cir. 2003) (citations and quotation marks omitted).

For purposes of this motion, Marzuq and Chantre concede that they each satisfy two of the four factors defining a "bona fide executive" employee, namely that they earned more than $455 per week and regularly directed the work of two or more employees. Pl. Opp. at 4 n. 3.[5] Marzuq and Chantre, however, dispute the remaining two factors. First, they deny that their primary duty was management of their respective Dunkin' Donuts stores. Second, Marzuq and Chantre deny having played any significant role in the hiring, firing, advancement, or promotion of other Cadete Group employees. Id.

As defined in the FLSA's regulations, "primary duty" means "principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). A determination of an employee's primary duty "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. Id.

---

[5] "Pl. Opp. _" refers to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment. Docket No. 59.

Cadete Group submits that the First Circuit decision in Donovan v. Burger King, 672 F.2d. 221 (1st Cir. 1982) compels a finding that Marzuq's and Chantre's primary duty was management. Def. Mem. at 2.[6] In Burger King, the First Circuit vacated a district judge's holding that assistant managers of a Burger King store were entitled to overtime pay. Burger King, 672 F.2d. at 227. In so doing, the Court affirmed the position that the person "in charge" of a store "has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions." Id.

Burger King is not dispositive at this stage of the litigation. Burger King premised its decision on the district court's prior determination that the subject assistant managers were indeed "in charge." See id. ("In light of the district court's finding here that the assistant managers were 'in charge' of the restaurant during their shifts, its conclusion that they do not have management as their primary duty cannot stand."). Here, it is not clear that Marzuq and/or Chantre were "in charge" and the Court has not yet made such a finding.

To determine whether Marzuq and Chantre were actually "in charge" or merely held such titles requires a fact-intensive inquiry into the role and responsibilities of the store manager position. See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1271-72 (11th Cir. 2008) ("In answering the primary duty inquiry, courts do not simply step on a talismanic phrase…[Defendant's] "in charge" label strikes us as a way to bypass meaningful application of the fact-intensive factors."); see also Harrington v. Despatch Indus., L.P., No. 03-12186-RGS, 2005 WL 1527630, at *3 (D. Mass. June 29, 2005) ("An exemption is determined by an employee's actual duties, and not by his title or the employer's formal description of his job.").

---

[6] "Def. Mem. _" refers to Cadete Group's Memorandum in Support of [Their] Motion for Summary Judgment. Docket No. 51.

Here, the parties dispute virtually all of the material facts pertaining to whether the Plaintiffs' primary duty was management. For example, the parties dispute the importance of Plaintiffs' managerial duties relative to their non-managerial duties. Although Cadete Group contends that store managers are "first and foremost" responsible for the operation and performance of their respective stores, Plaintiffs present evidence in support of their position that store managers are primarily responsible for serving and tending to Cadete Group customers. SUMF ¶¶ 10, 11, 14. Plaintiffs also provide testimony that they spent about 90% of their time performing non-exempt, menial tasks. Id. at ¶ 45; see also 29 C.F.R. §541.700(b) (although it is not dispositive of the issue, employees who spend more than 50% of their time performing exempt work will generally satisfy the primary duty requirement).

The parties also dispute the freedom of supervision inherent to the store manager position, particularly in light of Mr. Dermady's role as district manager. See, e.g., SUMF ¶¶ 10-11; Pl. Opp. at 8, 12-13. Lastly, the parties dispute the number of hours per week that Plaintiffs worked and, accordingly, how their salary compared to the hourly wages of non-manager employees. SUMF ¶¶ 19, 20; Pl. Opp. 14-15; Def. Rep. at 8-9.[7]

In light of the record, this Court finds that a genuine issue of material fact exists as to whether Plaintiffs'[8] primary duty was management of their respective stores. Accordingly, it

---

[7] " Def. Rep. _" refers to Cadete Group's Reply Memorandum in Support of Their Motion for Summary Judgment. Docket No. 64.

[8] Cadete Group argues that Chantre has not provided any testimony or other evidence. See Def. Rep. at 12. Nevertheless, the evidence of record, particularly as it relates to the role of Mr. Dermady and the responsibilities of store managers generally, is sufficient to create a genuine issue of material fact as to whether her primary duty was management. See SUMF ¶¶ 10-12.

recommends that Cadete Group's motion for summary judgment on Plaintiffs' overtime claim be denied.[9]

> B. Marzuq's Retaliation Claims

Marzuq contends that he suffered a retaliatory termination for filing a complaint under the FLSA and for supporting a similar claim under state law. See AC ¶¶ 23-27.

The FLSA's anti-retaliation provision prohibits an employer from penalizing an employee who seeks to enforce rights guaranteed by the federal law. See 29 U.S.C. § 215(a)(3); Blackie v. State of Me., 75 F.3d 716, 722 (1st Cir. 1996). Under the FLSA, it is unlawful for any person to "discharge or in any other manner discriminate against any employee" because such employee files a complaint seeking compensation for overtime hours. See 29 U.S.C. § 215(a)(3); see also M.G.L. ch. 149, §148A ("No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter".).

To establish a prima facie case for retaliation, Marzuq must show that (1) he engaged in a statutorily protected activity, and (2) Cadete Group thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity. Blackie, 75 F.3d at 722. Massachusetts' corresponding retaliation statute requires a similar showing. See Tomei v. Corix Utilities (U.S.) Inc., No. 07-CV-11928DP, 2009 WL 2982775, at *18 (D. Mass. Sept. 14, 2009) (citing Mole v. Univ. of Mass., 442 Mass. 582, 814 N.E.2d 329, 338-39 (Mass. 2004)).

---

[9] Because this Court recommends that summary judgment on the overtime claim be denied on grounds that a genuine issue of fact exists as to "primary duty," it does not discuss Plaintiffs' role in the hiring, firing, advancement and promotion processes.

11

Once a plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a "legitimate, non-retaliatory reason for its employment decision." Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996); see also Mogilevsky v. Wellbridge Club Mgmt., Inc., 905 F. Supp. 2d 405, 411 (D. Mass. 2012) (citations omitted).

If the defendant makes the requisite showing, "the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Fennell, 83 F.3d at 535; Mogilevsky, 905 F. Supp. 2d at 411.

1. *Prima Facie Retaliation*

Here, the first two elements of prima facie retaliation are satisfied for purposes of this motion. Marzuq's complaint fits squarely within the protections of the FLSA, and there is no dispute that Marzuq was terminated. The parties disagree, however, as to the basis for Marzuq's termination.

Marzuq insists that Cadete Group terminated him for filing the instant lawsuit and for giving evidence adverse to Cadete Group in the putative class action suit initiated by Marzuq's sons. Pl. Opp. at 2, 16. Marzuq points out that, prior to filing suit, he worked successfully for Cadete Group for more than seven years. Pl. Opp. at 17. During this time, Mr. Cadete described him as a "good manager," and indicated that the company's only criticisms of his performance were minor and "no more than" the general criticisms levied against other store managers. Id.; SUMF ¶ 66. Marzuq also relies on the testimony of Mr. Dermady, who explained that he had never previously terminated an employee for being out of uniform, unshaven, or failing to meet cleanliness standards. SUMF ¶ 69. Finally, the record indicates that a Cadete Group director expressed being "very disappointed" in Marzuq for filing this suit. Pl. Opp. 18; SUMF ¶¶ 65,

12

73. Accordingly, for purposes of the summary judgment motion, this Court finds that Marzuq has stated a prima facie case for retaliation.

### 2. *Legitimate Non-Retaliatory Reason*

Cadete Group contends that Marzuq was terminated for a legitimate, non-retaliatory reason, namely his violation of Cadete Group's tip policy. Cadete Group states that it changed the tip policy in February 2009. SUMF ¶ 21. Cadete Group further states that Marzuq knew of the company's tip policy and that several employees subordinate to Marzuq were terminated for violating the policy. Id. at ¶¶ 21, 26. Nevertheless, Cadete Group claims that Marzuq continued to take tips. Id. at ¶ 21. In addition, Cadete Group claims that it had other grounds for firing Marzuq. Specifically, Cadete Group submits audit results and "write-ups" noting deficiencies in the cleanliness of Marzuq's store. Id. at ¶¶ 27, 29. Accordingly, at this stage, this Court finds that Cadete Group has met its burden of showing a legitimate, non-retaliatory justification for Marzuq's termination.

### 3. *Pretext*

Marzuq asserts that a jury could conclude that Cadete Group's proffered reasons for terminating his employment are pretext. Pl. Opp. at 16. In support, he notes that he worked successfully for seven years and was deemed a "good manager." Id. at 17; SUMF ¶ 66. He also states he did not receive a revised version of the Cadete Group employee handbook explaining the changes in company tip policy until 2011. SUMF ¶ 21. Nevertheless, he stopped accepting tips from customers in approximately December 2010. Id. at ¶ 22. Marzuq insists that subordinate employees were terminated for violating the terms of the new tipping policy only after Marzuq's sons filed their class action suit in February 2011. Pl. Opp. at 16.

With respect to Cadete Group's alternative grounds for discharge, Marzuq notes that he repeatedly received an overall store cleanliness score of 100% in the Dunkin' Brands audits. Id. at 17; SUMF ¶¶ 27, 28. His immediate successor, however, received a score of 0% but remained in his position. Pl. Opp. at 17; SUMF ¶ 31. He also stresses that Cadete Group issued him the written warning for working out of uniform after he filed his claim for overtime pay. Pl. Opp. at 17; SUMF ¶ 32. Marzuq concludes that such behavior demonstrates that Cadete Group "papered his file" in order to substantiate the pretextual basis for his termination. Pl. Opp. at 16-18.

Questions regarding an employer's intent are not well-suited for resolution by summary judgment. See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998) (courts must be "particularly cautious" about granting employer's motions for summary judgment where intent is at issue). Indeed, when presented with such issues, a court's mandate is to defer to the jury as the ultimate finder of fact. Mogilevsky, 905 F. Supp. 2d at 413.

After reviewing the record in the light most favorable to Marzuq, the Court finds that a genuine issue of material fact exists as to whether Cadete Group terminated Marzuq for retaliatory reasons. Accordingly, it recommends that summary judgment for Cadete Group be denied on Marzuq's retaliation claims.

C. Individual Liability

Marzuq and Chantre seek to hold Mr. Cadete jointly and severally liable for unpaid wages owed to them. Cadete Group moves for summary judgment on grounds that Mr. Cadete does not maintain operational control of the named Cadete Group corporate entities.

FLSA liability attaches to any "employer," which is defined broadly to "include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); Manning v. Boston Medical Corp., __ F.3d __, Nos. 12-1573, 12-1653, 2013

WL 3942925, *9 (1st Cir. Aug. 1, 2013). In determining employer status, "economic reality" prevails over technical common law concepts of agency. Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983) (citing Goldberg v. Whitaker, 366 U.S. 28, 33 (1961)). The "overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Agnew, 712 F.2d at 1511; Manning, 2013 WL 3942925 at *9. The FLSA extends liability to "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees." Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007) (citing Agnew, 712 F.2d at 1514). In Baystate Alternate Staffing v. Herman, 163 F.3d 668, 677-78 (1st Cir. 1998), the First Circuit identified several factors that were important to the personal liability analysis, including ownership interest, degree of control over a corporation's financial affairs, and the setting of compensation.

Cadete Group states that Mr. Cadete is not subject to personal liability because he is "semi-retired and has had no involvement in the day-to-day operation of any of the Dunkin' Donuts stores, including the stores where Plaintiffs worked, for at least ten years." SUMF ¶ 7. Cadete Group further states that the directors of operations, not Mr. Cadete, set the salaries for store managers. Id. at ¶ 9. Plaintiffs counter that Mr. Cadete maintains an office at a Cadete Group corporation, spends 2-9 hours a day there, and works with the operations managers to set salaries for store managers. Id. at ¶¶ 7, 9. The parties dispute whether Mr. Cadete or the corporate defendants own directly the franchises at issue here. Id. at ¶¶ 4, 5.

After making all reasonable inferences in favor of Plaintiffs, this Court finds that a genuine issue of material fact exists as to whether Mr. Cadete is an "employer" for purposes of the FLSA.  Accordingly, this Court finds that summary judgment is not appropriate.

IV.     CONCLUSION

For the foregoing reasons, the undersigned recommends that Cadete Group's motion for summary judgment be DENIED.

V.      REVIEW BY DISTRICT COURT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal  
JENNIFER C. BOAL  
United States Magistrate Judge