UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GASSAN MARZUQ and TANISHA RODRIGUEZ, as representative of the estate of LISA CHANTRE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 11-10244-FDS |
| v. | ) ) ) | |
| CADETE ENTERPRISES, INC., T.J. DONUTS, INC., SAMOSET ST. DONUTS, INC., and JOHN CADETE, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER**
<u>**ON REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**</u>

**SAYLOR, J.**

This is a claim for overtime wages under the Fair Labor Standards Act. Plaintiffs Gassan Marzuq and Lisa Chantre, two former managers of local Dunkin' Donuts stores, have brought suit against several affiliated corporate owners and operators of Dunkin' Donuts franchises and their president.[1] Marzuq and Chantre contend that they are entitled to overtime compensation for hours worked over forty hours per week under the Fair Labor Standards Act, 29 U.S.C. § 201. Marzuq further contends that he was unlawfully terminated in retaliation for filing this action.

Defendants have moved for summary judgment. The motion was referred to Magistrate Judge Jennifer C. Boal for disposition pursuant to 28 U.S.C. § 636(b)(1). On August 29, 2013,

---

[1] Lisa Chantre died after the filing of the complaint. On August 29, 2013, the personal representative of her estate, Tanisha Rodriguez, was substituted as the plaintiff. For the sake of convenience, this memorandum will refer to Chantre as the plaintiff.

the Magistrate Judge issued a Report and Recommendation, recommending that defendants' motion be denied on all grounds. Defendants filed a timely objection to the Report and Recommendation.

On *de novo* review, and for the reasons set forth below, the Court will adopt the Magistrate Judge's recommendation as to the retaliation claim and reject the recommendation as to the FLSA claims. The Court will grant summary judgment for defendants as to the claims asserted under the FLSA.

**I.     Background**

    **A.     Factual Background**

The facts are set forth in detail in the Report and Recommendation of the Magistrate Judge. A brief summary, set forth in the light most favorable to the plaintiff, is outlined below.

Cadete Enterprises, Inc., T.J. Donuts, Inc., and Samoset St. Donuts, Inc. own, manage, and operate multiple Dunkin' Donuts franchises in southeastern Massachusetts. John Cadete is the president of the three corporations.

In 2007, Gassan Marzuq worked as a manager at a Dunkin' Donuts store owned by Cadete Enterprises. In 2009, Lisa Chantre began working as a manager for another Dunkin' Donuts store owned by Cadete Enterprises. Both managers were expected to work at least a six-day, 48-hour work week. Marzuq and Chantre were supervised by a district manager, Aaron Dermandy, who was responsible for the operation and performance of their stores, including setting the budget, determining staffing levels, and overseeing and completing ordering.

Frequently, store managers worked more than 48 hours week. If a crew member missed a shift, Marzuq and Chantre had to find a replacement or fill in themselves. Both Marzuq and

Chantre received a weekly salary of $825. Crew members were paid $8 an hour; store managers had no discretion to raise their pay.

Store managers had a wide range of responsibilities. Among other things, managers interviewed potential new employees, recommended termination of employees, helped train new crewmembers, made minor repairs, recorded calibrations of equipment for the company's review, cleaned out equipment, listened and apologized to customers for complaints, placed orders for food and paper goods, and maintained the cleanliness of the store. Managers also spent a significant portion of their time—sometimes 90 percent—serving customers at peak hours or when covering for other employees' shifts. Managers would continue their supervising duties while serving customers. For about two hours a day, managers also performed administrative tasks, such as filling out schedules, counting and depositing the store's receipts, and completing paperwork. Although managers were responsible for ensuring the store's policies were implemented, they had no power to terminate employees and often could not discipline them without the permission of the district manager.

A corporate audit in 2010 of Marzuq's store found evidence of rodent infestation and that the back of the store was not properly maintained and needed a good cleaning. That audit also gave Marzuq's store a 100% score for both interior and exterior cleanliness.

In February 2011, Marzuq's sons filed a class action lawsuit against Cadete Enterprises alleging that its tip policy violated the Massachusetts Tips Act, Mass. Gen. Laws ch. 149 § 152A. On November 9, 2011, Marzuq testified at a deposition as part of that case. From that deposition, Cadete discovered that Marzuq had been accepting tips in violation of Cadete policy until 2010. Cadete had changed its tipping policy in 2009 to prohibit managers from accepting

tips.  Marzuq contends he did not find out about the change in Cadete's tipping policy until 2011.  Cadete has fired other managers for violating its tipping policy, but only after Marzuq's sons filed their 2011 lawsuit.

On February 14, 2011, Marzuq and Chantre filed this case for overtime compensation under the FLSA.

In July 2011, another audit of Marzuq's store again noted the back of the store needed a good cleaning and that additional cleaning was needed under the bagel case.  That audit rated the store 100% for both interior and exterior cleanliness.  Between July 2011 and April 2012, Marzuq received written warnings for cleanliness issues and failure to wear a uniform while working.

Marzuq was fired from his manager position on April 24, 2012.  The company did not provide him with a reason for termination, instead instructing him to call his attorney.  The company contends it terminated Marzuq as a result of repeated violations of its tipping policy and other company policies.  A corporate audit gave Marzuq's former store a 0% cleanliness score a month after he was discharged.

### B.     **Procedural Background**

On July 18, 2012, Marzuq filed an amended complaint, adding claims for retaliation under the FLSA and state law.  Defendants moved for summary judgment, contending (1) plaintiffs were managers and therefore exempt from the FLSA overtime requirements, (2) Marzuq's termination was a result of his violation of their tips policy, not unlawful retaliation, and (3) defendant John Cadete could not be held personally liable for the companies' actions.

The Magistrate Judge issued a Report and Recommendation on August 29, 2013,

recommending defendants' motion be denied. Defendants make two objections to the report. First, they contend that the undisputed facts show that Marzuq and Chantre were exempt from overtime pay under the FLSA because their primary duty was management. Second, they contend that summary judgment should be granted as to the claims that Marzuq's termination was pretextual.

## II.     Standard of Review

Objections to a magistrate judge's report and recommendation are evaluated *de novo*. Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III. Plaintiffs' FLSA Claim

The FLSA requires every employer, with certain exceptions, to pay its employees a minimum hourly wage and overtime compensation for more than forty hours per week of work. 29 U.S.C. §§ 206, 207. Defendants contend that plaintiffs are exempt from receiving overtime pay because they were employed in a "bona fide executive" capacity. *Id.* § 213(a)(1). The term "employee employed in a bona fide executive capacity" is defined by Department of Labor regulations to mean any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). The employer bears the burden of showing that the exemption applies, and exemptions are to be interpreted narrowly against the employer. *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003).

Plaintiffs concede that they satisfy the first and third factors, but dispute the second and fourth factors. The Magistrate Judge found that there were material issues of disputed fact as to the second factor and recommended that the motion for summary judgment on the FLSA claim

be denied on that basis. She did not address the fourth factor.

### A. <u>Primary Duty</u>

The FLSA regulations define the term "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulation provides:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* Although employees who spend more than 50 percent of their time performing exempt work are generally exempt from the requirement of overtime pay, time alone is not the sole test. *Id.* § 541.700(b).

The FLSA regulations define the activities of "management" as:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102.

Defendants contend that under *Donovan v. Burger King*, 672 F.2d 221 (1st Cir. 1982),

the undisputed facts show that Marzuq and Chantre's primary duty was management. The Magistrate Judge found that *Burger King* did not control because that decision was premised on the district court's prior determination that the assistant managers involved were "in charge" of their stores. *Burger King*, 672 F.2d at 227. She reasoned that because it is not clear whether Marzuq or Chantre were "in charge" of their stores, *Burger King* was not dispositive. The Magistrate Judge then conducted a fact-intensive inquiry and concluded that there were material issues of genuine fact as to whether Marzuq's and Chantre's primary duty was management.

The Court agrees that *Burger King* controls the disposition of plaintiffs' FLSA claims. In *Burger King*, the defendant argued that its assistant managers were not entitled to overtime pay under the FLSA because they were employed in a "bona fide executive" capacity. 672 F.2d at 223. Under the then-existing version of the FLSA, employees were disqualified for overtime pay under that exemption only if their "primary duty" was management. *Id.* The assistant managers at issue were not on duty at the same time as their managers. *Id.* at 223. As part of their duties, they scheduled employees, assigned work, oversaw product quality, spoke with customers, trained employees, determined the quantity of food to be produced at any given time, and performed various recordkeeping, inventory, and cash reconciliation duties. *Id.* Many of those tasks were governed by highly detailed, step-by-step instructions contained in Burger King's "Manual of Operating Data." *Id.* Assistant managers also spent a portion of their time performing many of the same tasks as hourly employees, such as taking orders, preparing food, and filling orders and handing them to customers. *Id.*

The *Burger King* court found that an employee can still be "managing" even while physically doing something else. *Id.* at 227. Thus, the court found "the person 'in charge' of a

store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions." *Id.* Therefore, the assistant managers of Burger King qualified for the exemption. *Id.*

Even when viewed in the light most favorable to the plaintiffs, the facts in this case are in substance indistinguishable from the facts in *Burger King*. Dunkin' Donuts stores are fast-food establishments, like Burger King. Plaintiffs here scheduled employees, assigned work, spoke with customers, trained employees, and performed various recordkeeping duties. Plaintiffs did spend much of their time, when necessary, serving customers like normal hourly employees. However, they were still managing the store, even while performing such tasks.[2]

It is also clear that as managers, plaintiffs were at all times "in charge" of their respective stores. Just as the assistant managers in *Burger King* were "in charge" when no manager was present, plaintiffs were "in charge" of their stores when their district manager was not present. Plaintiffs here, like the assistant managers in *Burger King*, were required to adhere to company policies when supervising employees and had little discretion to make significant decisions.

The FLSA regulations give further guidance that supports that conclusion. Under the regulations, employees who perform exempt and nonexempt work concurrently are not disqualified from the executive exemption. 29 C.F.R. § 541.106(a). In explaining that rule, the regulations state:

> For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant

---

[2] Plaintiffs contend they did not have time to manage employees while serving customers, but Marzuq himself testified that he continued to oversee other employees in the store even when primarily serving customers. (Marzuq Dep. at 18-20).

> manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

*Id.* § 541.106(b). Plaintiffs here were managers who performed work such as serving customers while also supervising employees at the same time. Therefore, under *Burger King*, the undisputed facts show that the primary duty of the plaintiffs in this case was management.

### B. Authority to Hire and Fire

To qualify for the "bona fide executive" exemption under the FLSA, defendants must also show that plaintiffs had authority to hire and fire other employees, or that their recommendations as to hiring, firing, and advancement were given particular weight. 29 C.F.R. § 541.2(4).[3]

The parties agree that plaintiffs did not have the sole authority to hire and fire employees. Plaintiffs contend, however, that there is disputed evidence as to the extent of their involvement in the hiring and firing of employees, because they had to obtain permission from their district manager before making those decisions.

The FLSA executive exemption applies where the employee's recommendations as to hiring, firing, and advancement are given particular weight. 29 C.F.R. § 541.2(4). "To determine whether an employee's suggestions and recommendations are given 'particular weight,' factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with

---

[3] Having found the existence of a genuine dispute as to whether plaintiffs' primary duty was management, the Magistrate Judge did not reach the issue. Because, however, the Court reaches a contrary conclusion as to the management issue, that issue must be addressed in order to resolve the motion for summary judgment.

which the employee's suggestions and recommendations are relied upon." *Id.* § 541.105. "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id.* For example, summary judgment was not appropriate where the employees in question consistently testified they had no responsibility for recruiting, hiring, or firing employees. *See Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 558 (3d Cir. 2006) (reversing a grant of summary judgment).

Here, it is undisputed that plaintiffs interviewed potential new hires, and made hiring and firing recommendations to their district manager. Plaintiff Marzuq also testified that although his recommendations were not always followed, an employee was fired every time he felt strongly the employee should be fired. Marzuq Dep. at 15:7-23). Even though plaintiffs' district manager had the ultimate authority to hire and fire new employees, there are no disputed facts suggesting that plaintiffs' recommendations as to those personnel actions were not given particular weight. Accordingly, plaintiffs fall within the exemption for executive employees under the FLSA and are not entitled to overtime pay.

In summary, because the undisputed facts show that plaintiffs were employed in a bona fide executive capacity, the Court will not adopt the Report and Recommendation of the Magistrate Judge as to the claims for overtime compensation under the FLSA, and will enter summary judgment for defendants as to those claims.

**IV.    The Retaliation Claims**

Plaintiff Marzuq also contends defendants fired him in retaliation for filing a complaint

under the FLSA. The FLSA's anti-retaliation provision prohibits an employer from penalizing an employee who seeks to enforce rights guaranteed by the federal law. 29 U.S.C. § 215(a)(3); *Blackie v. State of Me.*, 75 F.3d 716, 722 (1st Cir. 1996). Under the FLSA, it is unlawful for any person to discharge or discriminate against any employee because such employee has filed a complaint seeking compensation for overtime hours. 29 U.S.C. § 215(a)(3). Massachusetts law has a similar provision. Mass. Gen. Laws ch. 149 § 148A.

Where there is no direct evidence of defendant's retaliatory animus, employment retaliation claims are subject to a burden-shifting framework. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996). The plaintiff must first establish a *prima facie* case of retaliation. *Id.* "Once a prima facie case has been made, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." *Id.* If the defendant makes that showing, "the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Id.*

The Magistrate Judge found that plaintiffs established a *prima facie* case of retaliation, and that defendants in turn articulated a legitimate, non-retaliatory reason for the termination. The Magistrate Judge then concluded that genuine issues of material fact existed as to whether defendants fired plaintiff Marzuq for retaliatory reasons. Defendants object to that conclusion. They contend (1) that defendants told Marzuq about the change in the tipping policy in 2009; (2) that he continued to take tips until the end of 2010; (3) that defendants did not know Marzuq had continued taking tips until 2011; and (4) that all managers who took tips in violation of the policy have been terminated. Defendants contend that these facts show Marzuq's termination

was not the result of retaliatory animus.

When the issue becomes whether an employer's stated reason is a pretext, courts must be particularly cautious about granting an employer's motion for summary judgment. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998) (discussing discrimination claim). "'[I]f the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation,' summary judgment may be appropriate even where intent is an issue." *Id.* (quoting *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 12 (1st Cir. 1994)) (alterations in original). Where the non-moving party has produced more substantial evidence, trial courts should use restraint in granting summary judgment. *Id.* Weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffer can give rise to an inference of pretext. *Harrington v. Aggregate Industries Northeast Region, Inc.*, 668 F.3d 25, 33 (1st Cir. 2012).

Reviewing the facts in the light most favorable to plaintiff, the Court agrees with the Magistrate Judge that there are genuine issues of material fact that preclude summary judgment on his retaliation claims. Plaintiff Marzuq contends he did not learn about the new tipping policy until 2011 and stopped accepting tips in 2010. He also contends that no managers were fired for violating the tipping policy until his sons filed their 2011 lawsuit. Finally, he contends that defendants "papered his file" by issuing him warnings six months prior to his termination in order to substantiate the pretextual basis for that termination. If that testimony is credited, a reasonable jury could conclude that defendants gave legal, pretexual reasons for firing Marzuq to hide retaliatory animus for his participation in lawsuits against the them.

It is true, of course, that defendants have articulated a legitimate, non-retaliatory reason for firing Marzuq, and produced evidence to support that conclusion. Under the circumstances,

13

that is not enough. Accordingly, the Magistrate Judge's recommendation as to plaintiff Marzuq's retaliation claims will be adopted.

### V.    Defendant John Cadete's Individual Liability

As defendants did not object to the Magistrate Judge's recommendation that defendants' motion as to John Cadete's individual liability should be denied, the Court will adopt that recommendation.

### VI.   Conclusion

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is ADOPTED as to the claims of unlawful retaliation and individual liability, but not as to the FLSA claims.  Defendants' motion for summary judgment is GRANTED as to the FLSA claim and DENIED as to the federal and state retaliation claims.  Defendant John Cadete's motion for summary judgment as to the claims against him is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: September 25, 2013                United States District Judge